# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. M-25-404-STE
John Walter Barnes, Jr. )
DOB: XX/XX/1987 )
SSN: XXX-XX-0523 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

John Walter Barnes, Jr. DOB: XX/XX/1987, SSN: XXX-XX-0523, an inmate at Payne County Jail, Stillwater, Oklahoma

located in the ___Western___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1151, 1153, and 2243(a) | Sexual Abuse of a Minor in Indian Country |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's Signature*

David Paul Young, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Jun 25, 2025**

*Judge's signature*

City and state: OKC, OK      **SHON T. ERWIN, U.S. Magistrate Judge**
*Printed name and title*

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, David Paul Young, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant to search and seize property, specifically, to search the person of John Walter BARNES, Jr., an Indian adult male, date of birth XX/XX/1987, further described in Attachment A, to seize a deoxyribonucleic acid (DNA) sample of BARNES by buccal (cheek) swab, as further described in Attachment B, because this sample may constitute evidence of violations of Title 18, United States Code, Sections 1151, 1153, and 2243(a) (Sexual Abuse of a Minor in Indian Country) by BARNES.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since August 2020. I am authorized to conduct investigations into violations of Federal law including major crimes in Indian Country, including Title 18, United States Code, Sections 1151, 1153, and 2243(a) (Sexual Abuse of a Minor in Indian Country).

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I, or others, have learned throughout the course of this investigation.

4. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18, United States Code, Sections 1151, 1153, and 2243(a) (Sexual Abuse of a Minor in Indian Country), will be located in the DNA of BARNES.

## Jurisdiction

5. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

6. The requested search is related to the following violations of federal law:

   a. Sexual Abuse of a Minor in Indian Country – 18 U.S.C. §§ 1151, 1153, and 2243(a)

7. Venue is proper because the person or property described in this affidavit is located within the Western District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

BARNES is currently in state custody as an inmate at Payne County Jail located at 606 South Husband Street, Stillwater, Oklahoma 74074.

## Probable Cause

8. On November 6, 2023, Officer Matt Kearney, Drumright Police Department, took a report from two individuals, J.M. and B.M., and their juvenile daughter, M.V. (DOB: xx/xx/2008). J.M. stated M.V. had been raped at the OYO Hotel Drumright located at 501 Lou Allard, Drumright, Creek County, Oklahoma. M.V. lived with her grandfather, D.M. On Saturday night, M.V. went to an older man's room where she was raped. B.M. stated she had M.V.'s underwear in a sack in their vehicle. Officer Kearney took possession of the underwear, placed them in an evidence bag, and secured them in a locking cabinet. While retrieving the item, B.M. inquired about "morning-after" pills for M.V. because M.V. stated to her that "he finished inside of her."

9. During Officer Kearney's interview with M.V., M.V. stated she went to a man named John's room at approximately 11:30 P.M., he let her use his cellular telephone for Snapchat, and he held her on the bed and forced himself on her. Officer Kearney stopped the interview so a forensic interview could be performed. Officer Kearney confirmed the incident happened in Room 106. M.V. described the person she knew as John to have a regular build, a bushy beard, and a missing tooth.

10. Officer David Wright, who assisted with the investigation, confirmed John Barnes (DOB: xx/xx/1987) had checked out of Room 106 early that morning.

11. Officer Kearney went to OYO Hotel Drumright and watched security video. Officer Kearney confirmed BARNES and M.V. walked down the hall at approximately the same time M.V. stated she went to the room with him. Officers collected bedding, bath towels, and rags from the room, and secured them in evidence.

12. On November 6, 2023, M.V. consented to a sexual assault examination conducted by Janet Chappell, Registered Nurse, forensic nurse with the Tulsa Sexual Assault Nurse Examiner (Tulsa SANE) Program. During the examination, Chappell collected various swabs for forensic testing, including from M.V.'s face, neck, external genitalia, mouth, anus, and vagina. M.V. disclosed she "felt stuff coming out" of her vagina, and M.V. stated she did not know what it was. Chappell noted an abnormality of the posterior fourchette, specifically a laceration of the tissue that connects the labia minora in the vulva.

13. On November 29, 2023, M.V. was forensically interviewed by Ashley Gonzales, FBI Child/Adolescent Forensic Interviewer, at the FBI's Tulsa Resident Agency. M.V. stated she had been living with her grandfather, D.M., at the OYO Hotel Drumright for approximately one year. On the night of the incident, M.V. could not sleep so she started "snooping around the hotel" and found D.M's old cellular telephone. While trying to unlock and reset the device, she went out in the hallway to get better Wi-Fi reception.

14. In the hallway, M.V. observed a man, whom she would later learn to be BARNES, and his dog at the other end of the hallway. BARNES approached M.V., and his dog began licking her. They engaged in conversation, and M.V. asked BARNES for help with her cellular telephone. BARNES offered to let M.V. use his cellular telephone. M.V. agreed, and she went with him to his room, room 106. M.V. attempted to access her Snapchat account with BARNES' cellular telephone, but she was unsuccessful because the verification code required to access the account was sent to her brother's cellular telephone.

15. At one point, BARNES put his dog in a kennel and closed the door to the room. M.V. stood up to leave, and BARNES hugged her and put her on the bed. BARNES asked M.V. if she had her first kiss, to which she replied, "no." BARNES started "making out" with her, but M.V. did not move her lips because she did not want her first kiss to be with him. BARNES started touching her inappropriately.

16. BARNES kissed M.V. on the mouth, neck, face, and breasts. BARNES removed M.V.'s clothes and used his fingers and his penis to penetrate M.V.'s vagina. M.V. said she felt "wetness" dripping down her vagina. Before leaving the room, M.V. asked BARNES, "Just to clarify, did you cum inside me?" BARNES responded, "No, my penis wasn't even inside you."

17. On May 16, 2024, Agents interviewed BARNES across the street from a business located at 2102 Seran Drive, Wewoka, Oklahoma. BARNES stated he had stayed at the OYO Hotel Drumright for approximately one week prior to the

incident. Sometime in the evening, BARNES saw M.V. seated by herself in the hallway of the hotel. M.V. initiated a conversation with BARNES, and BARNES then went outside and played horseshoes.

18. Approximately 30 minutes later, BARNES returned to his room and observed M.V. still seated on the bench. BARNES and M.V. possibly spoke on this second encounter. BARNES did not recall touching M.V., even to shake hands. BARNES returned to his room and did not leave the rest of the night. BARNES did not recall seeing M.V. later that night or the next morning.

19. BARNES denied raping M.V. BARNES had no reason to believe M.V.'s DNA would be in his hotel room. He did not remember her going into his room, but it was possible she did because he sometimes left his door open. It was possible she touched him after he fell asleep. M.V. was flirtatious with BARNES, but BARNES wanted "nothing to do with" M.V. because he was trying to work things out with his "ex."

20. At the time of the incident M.V. was 15 years old, and BARNES was 35 years old.

21. BARNES' enrollment with Muscogee (Creek) Nation was verified via letter from The Muscogee (Creek) Nation of Oklahoma Citizenship Board. The letter, dated November 6, 2023, indicated Barnes was enrolled with the Muscogee (Creek) Nation as of November 30, 2004, his roll number was 73123, and he had some degree of Indian blood.

22. The incident location was in Indian Country, as defined by Title 18 United States Code Section 1151, specifically within the boundaries of the Muscogee (Creek) Nation, and the Northern District of Oklahoma.

## DNA Evidence Collection
## of a Known Sample from a Person

23. The collection of a DNA sample from a person for the purpose of this criminal investigation will be performed in a reasonable manner by law enforcement personnel. The sample will be delivered to the Oklahoma State Bureau of Investigation Forensic Science Center in Edmond, Oklahoma or the Federal Bureau of Investigation at the FBI Laboratory in Quantico, Virginia for analysis. The analysis of the DNA will be performed by trained criminalists in accordance with ISO/IEC 17025, which specifies the general requirements for the competence, impartiality, and consistent operation of laboratories. The ISO accreditation proves a laboratory has an acceptable quality management system in place, and it has the ability and competence to provide testing and calibration results.

24. Swabbing the inside of a person's mouth or cheek with a sterile cotton swab and preserving the saliva and cells obtained as a result is a reliable method for collecting a DNA sample. This process is referred to as taking a "buccal swab" or "buccal smear."

## Conclusion

25. I make this affidavit in support of an application for a warrant to search the person of John Walter BARNES, Jr., described in Attachment A, to seize a

sample of DNA contained inside the human body of BARNES, as described in Attachment B, as the DNA is believed to contain evidence of violations of federal law, as more fully described herein. Therefore, I request the Court allow for the collection of a DNA sample from John Walter BARNES, Jr. and subsequent analysis for the purpose of laboratory comparison.

Respectfully submitted,

David Paul Young
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to by phone on June 25, 2025.

(U.S. Magistrate's Name) **SHON T. ERWIN**
UNITED STATES MAGISTRATE JUDGE

8

# ATTACHMENT A

## Property to be Searched

This warrant applies to the person of John Walter BARNES, Jr., date of birth XX/XX/1987, who is listed on his driver's license as 6'2" tall, weighing 180 pounds and having brown eyes, and who is pictured below:



## ATTACHMENT B

## Particular Things to be Seized

This warrant authorizes the seizure of the following materials, which constitute evidence of the commission of a criminal offense, namely violations of Title 18, United States Code, Sections 1151, 1153, and 2243(a) (Sexual Abuse of a Minor in Indian Country) by John Walter BARNES, Jr., who is more fully described and pictured below:



1. The deoxyribonucleic acid (DNA) of John Walter BARNES, Jr., collected via buccal (cheek) swab and suitable for laboratory comparison.

This warrant permits transportation of BARNES by officers to a medical facility for collection of these samples.